**Dennis BLACK, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted: Sept. 15, 1992.
Decided: Nov. 13, 1992.

---

Jerome M. Capone (argued), Wilmington, for appellant.

Paul R. Wallace (argued), and Timothy J. Donovan, Jr., Deputy Attys. Gen., Dept. of Justice, Wilmington, for appellee.

Before VEASEY, C.J., HORSEY and WALSH, JJ.

WALSH, Justice:

The appellant, Dennis Black, appeals from his conviction of attempted murder first degree following a jury trial in the Superior Court. He advances two claims of error: the refusal of the trial court to suppress a witness's statement as involuntary and improper comments by the prosecutor which prejudiced Black's right to a fair trial. We find no merit in the claim of error related to the admission of the witness's testimony. We conclude that the prosecutor's conduct in summation was unwarranted but, in view of the strength of the State's case, find such error harmless beyond a reasonable doubt. Accordingly, we affirm.

I

At trial, the State presented evidence of the following events. On July 25, 1990, around 7:00 p.m., Corwin Allen ("Allen") was watching three men play craps on the corner of Fourth and Rodney Streets in Wilmington. Avery Wilson ("Wilson") and his stepbrother, Nelson Davis ("Davis"), approached Allen and heated words were exchanged concerning a beating Allen had recently given Davis. Suddenly, two popping noises, which a witness described as shots fired from a starting pistol, were heard from behind Allen. Allen turned to see what caused the noise and saw a man wearing a black sweatshirt with its hood pulled tightly to hide his face. This individual, who had come from the south side of Fourth Street and crossed to the north side to get behind Allen, was pointing a handgun at Allen. The gun had apparently misfired after the initial firing and the shooter was attempting to adjust it. Allen asked the gunman if he was supposed to be scared and told him that, if he was going to shoot, to go ahead and do it. The gunmen then fired another shot at close range strik-

ing Allen in the eye. The gunman then fled the scene, running west on Fourth Street and north on Clayton Street.

Detective James Jubb and other officers of the Wilmington Police Department questioned witnesses at the scene of the crime. The police also received a number of anonymous telephone tips. As a result, the police began looking for Wilson and the appellant, Dennis Black ("Black"). Black is Wilson's stepbrother and Davis' half brother. At about 11 p.m. on the evening of the shooting, the police stopped a white Cadillac matching the description of Black's car and discovered it was being driven by Black's mother. She told the police that she was searching for Black because she was worried—his car had been driven to their house that night by someone other than her son. Detective Jubb asked Black's mother to tell Black to call him when she spoke to her son.

On July 26, around 3:30 p.m., Black voluntarily went to police headquarters, answered questions and was allowed to leave. Black told the police he was at the home of his girlfriend, Vanessa Hopkins, in Newport at the time of the shooting. Detective Jubb telephoned Vanessa Hopkins and she corroborated Black's alibi. However, Detective Paul Senghaas had been told by Wilson's girlfriend, Lisa Benson, that she had seen Black in Wilmington on July 25th both before and after the shooting.

On the evening of July 26, the police once again questioned Lisa Benson. This interview occurred at Christiana Medical Center where she had given birth to Wilson's son earlier in the day. Wilson, who had spent the day at the hospital, appeared during the interview and was arrested. Wilson was advised of his *Miranda* rights and taken to police headquarters in Wilmington. There he was once again advised of his *Miranda* rights and signed a form to that effect. Wilson then made a taped statement in which he identified Black as Allen's assailant.

The police obtained an arrest warrant for Black and a search warrant for both his residence and that of his girlfriend. The police arrived at Vanessa Hopkins' resi-

dence shortly after midnight on July 27. They knocked on the door, identifying themselves as police officers, and were admitted by Black. Black was immediately placed under arrest and advised of his *Miranda* rights. When asked what he had done with the gun, Black stated that he had "ditched" it on Clayton Street. Black then asked to see a lawyer and he was not interrogated further. After Black's arrest, Vanessa Hopkins withdrew her corroboration of his alibi, stating he had not been with her in Newport at the time of the shooting. Although the handgun was not recovered, the police discovered three .38 caliber cartridges in Black's room during the search of his residence.

The State presented three witnesses who made positive identifications of Black as Allen's assailant. In addition to Allen himself, Avery Wilson, who testified under a grant of immunity, testified that Black fired the shot which struck Allen. A third witness, a bystander, also identified Black as Allen's assailant. The jury found Black guilty of attempted murder first degree and possession of a deadly weapon during the commission of a felony.

## II

■ Black's first claim of error arises from the trial court's refusal to suppress the statement given by Avery Wilson after his arrest at the hospital. At a pretrial suppression hearing, Wilson testified he was under stress after the birth of his child and the police indicated that if he were charged with attempted murder he might be incarcerated and denied access to his girlfriend and the newborn child. The arresting officer testified, however, that Wilson's statement was given voluntarily after he had been in custody less than an hour. Wilson received repeated *Miranda* warnings and executed a written form indicating that he understood and waived his rights.

In denying the motion to suppress Wilson's statement, the trial judge, applying a "totality of the circumstances" standard, concluded that the statement was voluntary. The court noted that Wilson had an arrest and felony conviction history and

was not unfamiliar with the arrest process and his rights incident to that process. While acknowledging Wilson may have been under "certain stress," the court concluded, as a matter of credibility, that the repeated *Miranda* warnings, including a written form signed by Wilson, persuaded it that Wilson's statement was voluntary.

 A trial judge's determination of the voluntariness of a witness's statement is tested by the same standard which governs the admissibility of a defendant's statement. *Hatcher v. State*, Del.Supr., 337 A.2d 30 (1975). The trial judge, focusing on the "totality of circumstances," must determine "whether the behavior of the interrogators was such as to overbear the will of the interrogated to resist," producing a statement that is not the product of a rational intellect and a free will. *State v. Rooks*, Del.Supr., 401 A.2d 943, 948–49 (1979) (quoting *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)). On appeal of the trial judge's ruling, this Court will not disturb conclusions of fact supported by competent evidence. *Id.* at 949.

There was clearly ample evidence to support the trial judge's conclusion that Wilson's statement was voluntary. As the trial judge noted, the stress that Wilson experienced following the birth of a child was not of such significance as to interfere with his mental processes. Moreover, there was no indication that Wilson was under the influence of alcohol or drugs or otherwise impaired. His signature on the waiver form belies his claim of not having received *Miranda* warnings and the trial judge properly rejected this claim as a matter of credibility. We find no merit to the claim of involuntariness and affirm the denial of the motion to suppress.

### III

 We next address Black's claim that the prosecutor engaged in improper and prejudicial argument in jury summation. Black complains that the prosecutor made several comments reflecting on the credibility of defense witnesses. It does not appear that counsel made objection to the credibility aspersions but an objection was made to the following comment made by the prosecutor during his summation to the jury: [1]

> And ladies and gentlemen, if you believe beyond a reasonable doubt that every single element in this crime has been met and if you believe beyond a reasonable doubt that Dennis Black is the one who did it, it is your duty as jurors to find him guilty of both of these charges.
>
> Ladies and gentlemen, if you don't do that, simply based on who Corwin Allen is or who you think he is, and not because of any other reason, then ladies and gentlemen, we're in trouble. All of us are in trouble because laws are made for a reason. They're made to protect society too. Because we just can't let this behavior go on in some areas and not in other areas. New York tried it, ladies and gentlemen, and look at the mess it is. D.C., they're out of control; Philadelphia is out of control. Don't let Wilmington get out of control just because you may say he just tried to shoot a bad guy or somebody I don't like very much. Because ladies and gentlemen, that behavior affects a lot of other people. We know it affected Katheleen Johnson. It happened right in her block. We know that it affected that seven year-old little boy who witnessed it.

Defense counsel complained that the prosecutor's remarks were inflammatory and directed to the emotions of the jury. A mistrial was requested. The prosecutor defended his remarks on the ground that they were merely responsive to the defense tactic of portraying the victim, Corwin Allen, as unsavory character. In denying the

---

1. Apparently this objection was made at an unreported sidebar conference at the conclusion of the prosecutor's summation. As a result, we do not have the benefit of the specific objection nor the trial judge's immediate response. Following jury instructions, defense counsel renewed his objection and moved for a mistrial on the record. Once again, we note our concern at the failure to record sidebar conferences on matters of substance. *See Stephenson v. State*, Del.Supr., 606 A.2d 740 (1992).

mistrial motion, the trial judge indicated that he was not convinced that the prosecutor's comments were objectionable but that, in any event, the problem would be addressed through the court's general instruction to the jury to disregard counsel's opinion and to avoid being influenced by passion, prejudice or sympathy.

Although the State continues to maintain that the prosecutor's remarks were appropriate rebuttal to the defense effort to depict the victim as not entitled to the protection of society, we view the comments as improper in any context. For a prosecutor to urge a jury to convict a defendant in order to prevent the local community from becoming as violent as another locale is objectionable for a number of reasons. First, requesting the jury to consider the experience of other communities is directing their attention to matters not only outside the record but as to which their perceptions and personal knowledge may vary widely. Second, to appeal to the jury's fear that a failure to convict may increase violence in their community suggests a personal risk to the juror. Finally, to direct the jury's attention to a societal goal of maintaining a safe community is to direct their view from the task at hand. There is no higher societal goal for a juror in a criminal case than the determination of guilt or innocence on an individualized basis.

In *Brokenbrough v. State*, Del.Supr., 522 A.2d 851 (1987), this Court examined at length the duty of the prosecutor to refrain from improper or inflammatory comment in closing arguments. As we noted in *Brokenbrough*, we hold the prosecutor to no standard higher than that expressed in the ABA Standards and the Delaware Rules of Professional Conduct. *Id.* at 859. Our standards are no more exacting than those applied in the Third Circuit Court of Appeals. *See Government of Virgin Islands v. Joseph*, 3rd Cir., 770 F.2d 343 (1985); *United States v. Somers*, 3rd Cir., 496 F.2d 723 (1974); *United States v. LeFevre*, 3rd Cir., 483 F.2d 477 (1973). In *Brokenbrough*, we expressed the hope that our pointed criticism of such practices "will encourage the curtailment of the type of im-

proper closing arguments we have been repeatedly called upon to review." *Brokenbrough*, 522 A.2d at 864. Unfortunately, as this case illustrates, we continue to encounter the problem of prosecutorial excess in jury argument.

Of particular concern in this case is the failure of the trial judge to appreciate the inflammatory nature of the prosecutor's effort to enlist the jury in the cause of making the community safe. As we noted in *Brokenbrough*, the trial judge is obligated to prevent improper comment through control of trial counsel, "even without an objection." *Brokenbrough*, 522 A.2d at 863. Here, the trial judge appeared not to be convinced that the prosecutor's appeal to the jury's societal interest was impermissible and suggested that any taint of impropriety was mitigated by the court's general instructions concerning the role of counsel. While the general instructions may have had some mitigating effect, the clearly preferable course is to give a specific, immediate caution to the jury contemporaneous with the objection.

Although we find the prosecutor's comments to be improper, we are not inclined to view them as error *per se*, warranting reversal. The test is not whether the statements were improper but whether they were so prejudicial as to compromise the fairness of the trial process. *Brokenbrough*, 522 A.2d at 864.

In evaluating a claim of prosecutorial misconduct, this Court applies the three-prong test outlined in *Hughes v. State*, Del.Supr., 437 A.2d 559, 571 (1981). Under this test, the Court examines (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error; and (3) the steps taken to mitigate the alleged error. *Id.*

Black's case was not a close one. The eyewitness testimony presented by the State, including that of the victim's and Wilson's reluctant but equally positive identification, leaves little doubt that Black was the assailant. Black's sole defense was a claim of mistaken identity and, in particular, he sought to cast doubt on the

victim's veracity. In our view, however, the incriminating evidence against Black was overwhelming. The issue affected by the prosecutor's comments directed to the jury's societal duty, although clearly unwarranted, had little effect on the force of the eyewitness identification. Finally, the trial judge's instruction, although general and belated, served to remind the jury that its verdict was to be based on the evidence presented at trial, not on counsel's remarks. In sum, while we find the prosecutor's remarks improper, and in a closer case they might be viewed as diverting the jury from its duty to decide the case on the evidence, we find them harmless beyond a reasonable doubt.

The judgment of the Superior Court is AFFIRMED.