**William CHAPMAN, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 356, 2002.

Supreme Court of Delaware.

Submitted: Feb. 4, 2003.
Decided: April 21, 2003.

---

41. *See, e.g., In re Benson*, 774 A.2d 258 (Del. 2001); *In re Macpherson–Johnson*, 2001 WL 760866 (Del. June 14, 2001).

42. 652 A.2d 1071 (Del.1995).

43. *Id.* at 1077.

Bernard J. O'Donnell, Assistant Public Defender, Office of Public Defender, Wilmington, for Appellant.

John Williams, Deputy Attorney General, Department of Justice, Dover, for Appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court En Banc.

PER CURIAM:

The appellant, William Chapman ("Chapman") appeals from his conviction following a jury trial in the Superior Court of Aggravated Menacing, Possession of a Fireman During the Commission of a Felony and Carrying a Concealed Deadly Weapon. In this appeal, Chapman alleges error in two respects: (i) the solicitation of irrelevant favorable character evidence from prosecution witnesses and (ii) the prosecutor's statements in jury summation appealing to the jury's sense of community safety as an argument in favor of conviction. We find no merit to either claim of error and accordingly affirm.

I

The events which led to the charges against Chapman arose from an incident that occurred in the Town of Wyoming,

Delaware on September 28, 2001. At approximately 9:45 p.m. that evening, Michael McFann and his girlfriend, Michelle Albertelli, were walking McFann's dog along East Railroad Avenue when they became aware that a motor vehicle—a Ford Explorer—was approaching from behind at a high rate of speed. The speed limit within the town limits was 25 miles per hour and the driver of the Explorer, Bruce Petricella, testified at trial that his speed was "like 35." Upon approach of the Explorer, the two pedestrians separated, with McFann remaining on the right side of the road and Albertelli on the left side. As the Explorer passed him, McFann made a hand gesture and yelled for the vehicle to slow down. The vehicle stopped and McFann exchanged words with the two occupants, Petricella, and Chapman who was in the passenger seat. McFann testified that during this verbal exchange, Chapman reached for a handgun, an automatic with a red laser sight, and pointed the gun, fixing the laser beam first at the dog and then at McFann. McFann testified that he became frightened by the pointing of the gun and Chapman's angry comments. Albertelli did not observe the pointing of the gun but testified that McFann appeared upset and related the gun pointing incident to her as soon as the vehicle drove off.

McFann and Albertelli observed the license plate number of the Explorer and they passed it on to the Chief of the Wyoming Police Department. Police investigation led to Petricella and the later identification of Chapman as the passenger in the vehicle. Both Petricella and Chapman testified that while a verbal altercation had occurred, neither displayed a gun during the confrontation. The jury resolved this credibility dispute through its finding of guilty as to all three charges.

## II

■ Chapman's first claim of error is directed at the trial judge permitting the prosecutor to inquire into the educational background of the two complaining witnesses who testified against Chapman. The defendant complained at trial, and repeats the argument here, that the elicited testimony was intended to contrast "law-abiding, educated, fun-loving family people," with Chapman and Petricella both of whom admitted to criminal records.

■ The trial judge enjoys considerable discretion in determining the relevance of peripheral or background evidence concerning a witness. Such evidence may be necessary to provide the jury with the general character of the witness particularly when, as D.R.E. 402 instructs, "[a]ll relevant evidence is admissible" and its exclusion is subject to a balancing test as a matter of discretion under D.R.E. 403. Credibility was the nub issue in this case. Evidence of good character, to a limited extent, was relevant to the issue of credibility as was evidence of bad character, which can be proven by authorized means of impeachment under D.R.E. 609. The "good character" evidence presented here was limited and we cannot conclude that its admission was an abuse of discretion.

## III

■ Chapman's second claim of error is directed to statements made by the prosecutor in jury summation. Specifically, Chapman complains of the following statement made by the prosecutor:

Ladies and gentlemen, Chief Kober [the Wyoming Chief of Police] told you that he, that night, was concerned about somebody in his community having a gun. This is a community in which there are only 15 felony arrests in an entire year. It's nice to have at least some safe haven in the society that we

live in today, and Wyoming happens to be one of those. It's a peaceful, quiet community.

In his rebuttal summation, the prosecutor also allegedly invited the jury to view McFann's reaction to the confrontation as similar to that which "you" would experience if confronted by a robber.

At trial, Chapman objected to these comments on the ground that they constituted an appeal to the jury's fear of the societal consequences of crime in the community where the jurors, or some of them, may live. In addition, Chapman argued that the prosecutor invoked the "golden rule," *i.e.* asked the jurors to identify, and empathize, with the victim of a crime. Since the objection was made at trial but overruled, we review the trial judge's ruling *de novo*.

In *Black v. State*, 616 A.2d 320 (Del. 1992) this Court deemed "improper in any context" any attempt by the prosecutor to suggest that a failure to convict may increase community violence, or to suggest a personal risk to a juror. Here, the prosecutor's remarks about the peacefulness of the Wyoming community were made in the context of explaining why the Wyoming Chief of Police, who deals with few felony investigations, did not tape record the complainant's statements. While the "golden rule" reference is improper to the extent it sought to place "you" (the jury) in the role of the victim, we believe it to be of marginal significance since it occurred in rebuttal as a response to an attack on the credibility of the complaining witness.

■ We have traditionally tested the effect of alleged prosecutorial misconduct in jury statements by the standards established in *Hughes v. State*, 437 A.2d 559, 571 (Del.1981). Under *Hughes*, and as applied in *Black*, prosecutorial misconduct may be deemed error *per se* depending upon: (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error, and (3) the steps taken to mitigate the alleged error. When measured by the *Hughes* test, the misconduct alleged here, particularly when factored against the strength of the State's case, does not rise to the level of reversible error.

■ While this matter was pending decision, the Court decided *Hunter v. State*, 815 A.2d 730 (Del.2002), in which we broadened the three part test in *Hughes* to include an additional factor to be considered in determining the basis for reversal—whether the prosecutor's errors are repetitive, *i.e.*, whether there is a pattern or history of prosecutorial misconduct that has persisted despite the Court's oft-repeated admonitions against such practices. We ordered supplemental briefing on whether the repetitive factor announced in *Hunter* should be applied in this case. After consideration of the supplemental briefing, we agree with the State that the *Hunter* error analysis adding the factor of repetitive conduct should not be given retroactive effect because, as a matter of logic and fairness, prosecutors were not on notice that their conduct would be measured by standards not then in effect. Since the issuance of the decision in *Hunter*, prosecutors are charged with the knowledge that a higher standard applies. Thus, after application of the three-pronged *Hughes* test, we conclude that the statements of the prosecutor in jury summation do not amount to reversible error.

Finding no merit to either claim of error alleged in the appeal, we AFFIRM Chapman's convictions. Pursuant to Supreme Court Rule 18, the time within which a motion for reargument may be filed in this matter is shortened to seven days from the date of this Opinion.