**Damone FLOWERS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 264,2003.

Supreme Court of Delaware.

Submitted: May 25, 2004.
Decided: Aug. 31, 2004.

Eugene J. Maurer of Wilmington, Delaware for appellant.

John Williams of the Department of Justice, Dover, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, Justices and CHANDLER, Chancellor,* constituting the court *en banc*.

STEELE, Chief Justice.

On this direct appeal from his conviction for the murder of Alfred Smiley and related charges, Damone Flowers asserts four grounds for reversal: (1) the trial judge erroneously admitted an involuntary statement by a witness; (2) the prosecutor made unfairly prejudicial remarks during the opening statement that were unsupported by the evidence, thereby directly affecting the outcome of the trial; (3) the prosecutor recklessly elicited testimony from a witness that Flowers had recently been released from "jail;" and (4) a prosecution witness, during cross examination by defense counsel, unresponsively disclosed that defense counsel had represented him (the witness) on an earlier weapons charge.

After carefully reviewing the record and considering his claims, we are satisfied that the trial judge acted appropriately within her discretion by admitting the challenged evidence and by denying the mistrial applications. We also conclude that two errors that did occur during trial were rendered harmless by the trial judge's timely and sufficiently curative instructions.

## I.

On August 1, 1998 Alfred Smiley drove a car with two passengers in the area of 22nd and Lamotte Streets in Wilmington. At some point, Smiley became involved in an argument with several people on the street. A gunshot fired from the sidewalk next to the car struck Smiley in the chest. The car careened out of control on the street and came to rest against a utility pole. Wilmington Police responded to the call and took Smiley to the hospital where he died from the gunshot wound.

The State charged Damone Flowers with Smiley's murder and presented five witnesses at trial who were alleged to have been present at the scene of the shooting. Most of the incriminating evidence was presented through pretrial taped statements. Flowers presented no witnesses and did not testify. A jury convicted Flowers of First Degree Murder[1] and Possession of a Firearm During the Commission of a Felony.[2] The trial judge denied Flowers' motion for a new trial.[3]

## II.

Flowers first argues that the taped statement of Ronetta Sudler, an eyewitness who identified him as the shooter, was not voluntarily obtained and therefore was improperly admitted. We review the record to determine whether Sudler voluntarily made the out-of-court statement.[4] Determining whether a statement is voluntary requires a "careful evaluation of all the circumstances of the interrogation."[5] Promises of leniency or inducements to cooperate may affect the reliability or trustworthiness of a statement, but they

* Sitting by designation pursuant to Del. Const. Art. IV § 12.

1. 11 Del. C. s. 636(a)(1).

2. 11 Del. C. s. 1447A(a).

3. *See State v. Flowers*, Del.Super., Id# 9808000280, (February 5, 2003) (Order).

4. *Black v. State*, 616 A.2d 320, 323 (Del.1992); *Roth v. State*, 788 A.2d 101, 108 (Del.2001).

5. *State v. Rooks*, 401 A.2d 943 (Del.1979).

do not make a statement *per se* involuntary unless they are "so extravagant, or so impressionable as to overbear the person's will and rational thinking process." [6]

During an August 11, 1998 *videotaped* interview conducted by Detective Andrew Brock, Sudler stated that she was across the street from where the shots were fired and that Flowers was the person firing the gun. Sudler was not aware that she was being videotaped at time she made her statements to the police. At trial, and after being transported from a Sussex County work release center, Rosetta Sudler reluctantly testified as a prosecution witness. She testified that she did not remember what she had told Detective Brock in her statement and that she did not recall seeing Flowers with a gun at the scene of the shooting. She further stated that Brock threatened to take her children from her if she did not cooperate and give a statement. When the State proposed to call Detective Brock in order to authenticate the contradictory videotaped interview, pursuant to 11 *Del. C.* § 3507,[7] Flowers objected on the basis that Sudler involuntarily gave the videotaped statement.

The trial judge allowed *voir dire* examination of Sudler in order to determine the voluntariness of her August 11th videotaped statement. Sudler testified during *voir dire* that she was probably high on drugs, and possibly hallucinating, on the night of the shooting. During *voir dire* she maintained that she could not remember anything about her statement, including Brock's alleged threats to take her children from her if she did not cooperate. Because *voir dire* produced no new significant, credible, evidence touching on the voluntariness of Sudler's statement, defense counsel asked the trial judge to view the tape. After viewing the tape, the trial judge stated:

> I believe the questions of the witness were within the realm of ordinary police work. She did not want to talk- His job was to get her to talk, and he did. I don't find that the statement was involuntary, despite her initial unwillingness to talk.[8]

The trial judge's ruling acknowledges Sudler's initial unwillingness to make a statement, but characterizes the police questioning as reasonably calculated to obtain her statement about the incident. The trial judge, herself, viewed the tape and determined that Detective Brock was not so unfairly oppressive or overbearing that his manner compromised Sudler's willingness to make a statement.

The trial judge admitted Sudler's out-of-court pretrial statement to Detective Brock only after making a careful factual finding that Sudler gave the statement voluntarily. Because the record supports the trial judge's findings, we affirm her denial of Flowers' objection to the admission of the statement.

### III.

■ Flowers next challenges remarks made during the State's opening statement and summation. On the first day of trial

---

6. *Id.* at 948.

7. § 3507. Use of prior statements as affirmative evidence. (a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value. (b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

8. Trial Transcript p. 3–4 (October 24, 2002).

the prosecutor made reference to a "code of silence" that was set into motion after the shooting by various eyewitnesses. Flowers insists that the remark was unsupported by the evidence and constituted unfairly prejudicial, reversible error.

■ The defense did not object to the "code of silence" reference at trial. Therefore, we review it for plain error.[9] To be plain error, the remark must have affected Flowers' substantial rights, or, generally, it must have affected the outcome of the trial.[10] We find that, while the record is sparse, it nonetheless supports the State's reference to "a code of silence" among those who witnessed the shooting. Ronetta Sudler's reluctance to confirm her videotaped interview suggests a change of heart arguably consistent with a pattern of silence among the eyewitnesses. A reasonable inference about the existence of a code of silence may also be drawn based on evasive, reluctant testimony by eyewitnesses Othello Predeoux and Tysheik McDougall. We find no plain error here because the State substantiated the remark's suggested inference in the State's opening through sufficient record evidence. Flowers fails to demonstrate how the reference otherwise distorted the evidence so prejudicially that it unduly affected the outcome and deprived him of a fundamentally fair trial.

■ The second challenged remark involved the prosecutor asking the jury to "[k]eep in mind someone approaches Mr. Mays between the time he gives his statement to the police..." This remark, although the subject of an objection at trial, appears to have been abandoned on appeal because Flowers has altogether failed to develop it.[11] Accordingly, we are unable to address the merits of this argument.

## IV.

■ Flowers contends that the trial judge erred by denying his mistrial application on the basis that the prosecutor had recklessly elicited testimony from Flowers' sister about Flowers' recent release from jail. Rather than grant a mistrial, the trial judge gave a curative instruction. Flowers argues that the refusal to grant a mistrial denied him a fair trial because his defense strategy centered on his not testifying.[12] He maintains that by allowing the jury to learn of his recent incarceration, he lost the benefit of this trial strategy. Although Flowers seeks *de novo* review to determine whether an error of law occurred that affected his substantial rights, we review the trial judge's denial of Flower's motions for a mistrial and for a new trial for abuse of discretion.[13] In so doing, we also consider the extent to which the trial judge's instruction to the jury to disregard the reference to previous "jail"

9. *Clayton v. State*, 765 A.2d 940, 942 (2001); *Trump v. State*, 753 A.2d 963, 964–65 (Del. 2000).

10. *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

11. Although Flowers initially cites to a portion of the closing argument that refers to prosecution witness Vernon Mays, the argument in the Opening Brief then inexplicably shifts to a discussion of the trial testimony of witness Matthew Chamblee, without establishing the connection between the closing argument remark about Mays and the later trial testimony of Chamblee.

12. If Flowers testified in his own defense, earlier convictions for second degree robbery and drug trafficking would likely be revealed to the jury. Apparently Flowers' best hope for appearing credible to a jury was not to testify at all.

13. *Taylor v. State*, 685 A.2d 349, 350 (Del. 1996).

time served by Flowers cured any unfair prejudice.[14]

The State called Flower's sister, Adrienne Dawson, for the purpose of establishing that Flowers, who lived with Dawson before the shooting occurred, fled Delaware immediately after the August 1, 1998 shooting. The prosecutor asked Dawson how long Flowers had lived in her house prior to August 1. Dawson responded: "when he came home from—I don't remember what that was—I don't remember the date, when he came home *from jail.*"[15] Defense counsel immediately objected and moved for a mistrial. After hearing arguments on the motion, the trial judge denied the motion and immediately gave a curative instruction.

Dawson's answer was clearly unresponsive to the prosecutor's question. It is apparent from the transcript that the prosecutor did not intend to elicit a response that included reference to Flowers' recent jail time and, in fact, took measures to prevent any reference to it by asking Dawson to respond in terms of time. In denying the motion for a mistrial and, later, the motion for a new trial, the trial judge correctly noted that Dawson's "vague and unsolicited" reference to Flowers recent "jail" time, "lessened the impact of the testimony."[16] The trial judge also noted that Dawson's fleeting reference "did not reveal why the defendant was in prison and for how long."[17] Here, the immediate curative instruction cured any unfair prejudice to Flowers. The trial judge acted appropriately within her discretion by de-

nying the motion for a mistrial and the motion for a new trial.

## V.

■ Lastly, Flowers argues that he was significantly prejudiced by another witnesses' non-responsive answer. The novel nature of this argument in the context of this case requires some background. Before the selected jury was sworn, the State moved to disqualify defense counsel on the ground that defense counsel had previously represented a State's witness, Othello Predeoux. The trial was rescheduled in order to allow the parties an opportunity to brief the legal issues concerning disqualification. Ultimately, the trial judge determined that counsel did not have a conflict of interest in representing Flowers, despite his previous representation of Predeoux, reasoning that all the information counsel would use during cross-examination was public record and would not include any information derived from the earlier lawyer-counsel relationship. Moreover, the trial judge found that the orderly and careful presentation of relevant evidence in Flowers' trial precluded any need for the jury to learn of defense counsel's earlier representation of Predeoux.

At trial, Predeoux offered direct testimony damaging to Flowers. Specifically, Predeoux had made a taped statement to the police in July, 2002, in which he was unequivocal that Flowers was the man who shot Smiley on August 1, 1998. Defense counsel conducted an aggressive cross-examination designed to impeach Predeoux's

---

14. *Sawyer v. State*, 634 A.2d 377, 380 (Del. 1993) "Even when prejudicial evidence is admitted, its prompt excision followed by a cautionary instruction will usually preclude a finding of reversible error."

15. Trial Transcript p. 175 (October 25, 2002) (emphasis added).

16. *See State v. Flowers*, Del.Super., Id# 9808000280, (February 5, 2003) (Order).

17. *Id.*

credibility. Defense counsel focused on the likelihood that Predeoux's statement was self-serving and designed to minimize a potentially lengthy sentence that could result from two separate charges pending against him. The following exchange occurred:

Q: (defense counsel) Now, when you gave the statement to police you added a touch saying when you saw this incident you vomited, right?

A: (Predeoux) Yes.

Q: Because I guess you don't like violence or it upset you to see that kind of violence?

A: No, it is the first time I saw something like that before.

Q: Okay. But you don't have a problem with violence now, do you?

A: Well, I mean I don't know what you're saying.

Q: Well, I'm asking if it upsets you.

A: If you do something to me, I'm going to upset you.

Q: Maybe you didn't just add that for effect, the vomiting part?

A: No that's what happened that's what I did.

Q: You're certainly not a stranger to guns?

A: No.

Q: And guns cause violence, don't they?

A: Yes.

Q: As a matter of fact, back in '98 when we were talking about that you had two of them [referring to guns] on you person, did not you?

A: Yes.

Q: As a matter of fact, that was in September, early September of 1998, wasn't it?

A: Yes, *you represented me.*[18]

*Defense counsel* immediately *moved for a mistrial,* on the ground that the non-responsive reply caused *counsel* to lose credibility in the eyes of the jury. He explained that his entire cross-examination was designed to impugn Predeoux's character and establish that Predeoux was unworthy of belief. The revelation that defense counsel had previously represented Predeoux, amidst an aggressive cross-examination designed to impugn Predeoux's credibility would likely cause the jury to view defense counsel in a negative light— as an attorney willing to represent a client on one day and on a later date vigorously attack his former client when it suited his purposes. Additionally, counsel *argued,* that negative impact and loss of credibility infected the entire defense and would likely be imputed to Flowers himself. This unexpected turn of events, it is now claimed, unfairly prejudiced Flowers and adversely affected the outcome of the case.

The State disputes that the reply was *unfairly* prejudicial. Rather, the State argues that Flowers' counsel "assumed" the risk of any prejudice, first by not withdrawing from the case, and then by cross-examining the witness about weapons charges on which counsel had previously represented him in a manner that induced Predeoux's allegedly unfairly prejudicial comment. Moreover, the State maintains, regardless of the risk that it may have caused the jury to look less favorably upon defendant and his counsel, Predeoux's reply did not affect the outcome of the trial.

 We review the denial of motion for a mistrial for an abuse of the trial judge's discretion.[19] A trial judge is in the

---

**18.** Trial Transcript p. 118–120 (emphasis added).

**19.** *Steckel v. State,* 711 A.2d 5, 11 (Del.1998).

best position to determine whether a mistrial is warranted.[20] The extreme remedy of a mistrial is required only where no "meaningful and practical alternatives" are available to remedy an error at trial.[21]

In this case, the *potential* prejudicial effect of Predeoux's uninvited reference to defense counsel's former representation is clear. It is unlikely, however, that it *actually* affected the outcome of Flowers trial or significantly compromised the trial's fairness.

Defense counsel insisted from the outset of trial that there would be no conflict of interest, no compromise of confidential information and, therefore, no resulting prejudice from his former representation of eyewitness Predeoux. Although Predeoux gave a non-responsive reply to a carefully tailored question, and no fault may be imputed to either defense counsel or the prosecutor,[22] apparently no one made an effort before trial to caution Predeoux to avoid any potentially prejudicial reference to defense counsel's earlier representation.

The trial judge, nonetheless, albeit after the fact, took appropriate measures to control the situation: she instructed the witness not to make any further reference to the previous representation. She also suggested, as a curative measure, that defense counsel briefly question Predeoux in order to establish that the earlier representation had resulted in a plea agreement. Defense counsel's follow-up questions then promptly and succinctly addressed whatever damage to his credibility may have resulted from the disclosure that he had previously represented a witness testifying adversely to his current client's interests.

We believe that defense counsel's additional questions appropriately refocused the jury on Predeoux's, and not defense counsel's, credibility.

We recognize that the presentation of credible witnesses by a competent criminal defense attorney is often the linchpin of an accused's case. Defense counsel is an experienced, accomplished attorney. While the revelation that he had previously represented Predeoux on the criminal charge upon which he was cross-examining him may have come as a surprise to the jury, we find it highly improbable that defense counsel lost significant credibility in the eyes of the jury. Where defense counsel's credibility is damaged or wounded in the eyes of the jury, that may cause prejudice and may disrupt a case. Here, however, both the remote chance of the disruption creating unfair prejudice and the curative steps taken by the trial judge weigh favorably against the alternative, extreme remedy, of a mistrial.

Finally, after carefully reviewing the record, it is clear that Predeoux's uninvited response did not affect the outcome. This case did not turn on the credibility of Flowers' trial counsel; it turned on the credibility of the five eyewitnesses who corroborated the basic facts about the shooting and the shooter. Predeoux's fleeting, volunteered, non-responsive answer did not so damage Flowers' overall defense that the extreme remedy of a mistrial was the only meaningful or practical solution to potentially unfair prejudice.

We conclude that the trial judge acted appropriately within her discretion when she denied Flowers' motion for a mistrial.

---

**20.** *Ashley v. State*, 798 A.2d 1019, 1022 (Del. 2002).

**21.** *Dawson v. State*, 637 A.2d 57, 62 (Del. 1994) quoting *Bailey v. State*, 521 A.2d 1069, 1077 (Del.1987).

**22.** The trial judge, in denying the motion for a mistrial, found that "no prosecutorial misconduct occurred." February 5, 2003 (ORDER)

For the foregoing reasons, the judgment of the Superior Court is hereby AFFIRMED.