**Donal HULL, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 430,2004.

Supreme Court of Delaware.

Submitted: Nov. 10, 2005.

Decided: Dec. 14, 2005.

*ary persuasive authority on several occasions.*

Thomas A. Pedersen, Georgetown, for appellant.

Kim Ayvazian, Department of Justice, Georgetown, for appellee.

Before HOLLAND, JACOBS and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Donal Hull, was charged with Attempted Murder in the First Degree, two counts of Possession of a Handgun During the Commission of a Felony and related offenses. Following a jury trial, Hull was found guilty of the lesser-included offense of Reckless Endangering in the First Degree, Aggravated Menacing and two counts of Possession of a Firearm During the Commission of a Felony. Hull was immediately sentenced to the minimum mandatory six-year period of incarceration that is required by statute.

Hull has raised two issues in this direct appeal. First, he contends that the trial judge improperly limited his cross-examination of a witness, Montie Hayman. Second, Hull submits that the trial judge improperly denied his motion for a judgment of acquittal. We have concluded that neither of Hull's arguments on appeal is meritorious. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

On Sunday, September 21, 2003, Hull attended the automobile races at the Delmar Racetrack. Also present at the races that day were Dwayne Batson and Montie Hayman. The men all knew each other from attending the races for many years.

Batson and Hull got into a dispute over a bet. Batson punched Hull in the face and a struggle ensued. Hayman and another man eventually separated Hull and Batson. According to Hayman, as Hull ran to his car, a gray Mitsubishi Galant, Hull shouted back at Batson, "you're a dead man."

Batson remained at the racetrack for another ten to fifteen minutes. When he left, he switched cars with Hayman and

drove Hayman's 1990 tan Chevrolet pickup truck home toward Cambridge, Maryland. As Batson was driving on the Delmar Road at approximately 6:30 p.m., he passed a white Jeep Cherokee. Batson recognized Hull as the driver of the Cherokee.

Batson pulled over to the shoulder of the road. Batson observed Hull getting out of the Cherokee and approaching the rear of the truck. When Hull lifted up his shirt, Batson could see Hull's hand on the handle of a gun. Batson drove off at high speed. Hull returned to his vehicle and gave chase.

According to Batson, Hull pulled his vehicle along side of Batson, driving on the wrong side of the two-lane road, and fired several shots at Batson with what appeared to be a nine millimeter black gun. One shot shattered the driver's side window and another shot penetrated the driver's door. An oncoming car forced Hull to pull behind Batson, but he fired another shot through Batson's back window that exited through the front windshield. Hull then pulled over and drove his vehicle in the opposite direction.

Batson drove on to a friend's house in Hurlock, Maryland. He told his friend what had happened. Later, Batson drove to find Hayman in Cambridge, Maryland and from there he drove to the police station.

At trial, Hull denied that he ever shouted at Batson, "you're a dead man," or drove home and got into a white Jeep Cherokee to go looking for Batson. Hull's wife supported his version of the facts testifying that she had driven the white Jeep Cherokee to church that day and did not return home until about 8 p.m.

### Cross–Examination Properly Limited

■ Hull's first argument on appeal is that the trial judge improperly limited his cross-examination of Montie Hayman, a witness to the initial fight between Hull and Batson. According to Hull, inquiry into Hayman's prior drug convictions was crucial to demonstrate that Hayman and Batson had a motive to fabricate their testimony. The trial judge denied Hull's request to admit into evidence Hayman's prior misdemeanor drug convictions because they were not admissible under the Delaware Rules of Evidence.

■ A trial judge has broad discretion in determining the relevance of "peripheral or background evidence concerning a witness."[1] Hull requested more information about Hayman's prior criminal background than the State had been able to provide. The trial judge allowed defense counsel the opportunity to question Hayman outside the presence of the jury to determine the disposition of his drug dealing and assault charges. Hayman admitted having only two misdemeanor convictions involving drug possession. The trial judge refused to allow Hull to introduce this evidence under Delaware Rules of Evidence 609(a), which provides:

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of the punishment.[2]

---

**1.** *Chapman v. State,* 821 A.2d 867, 869 (Del. 2003).

**2.** *See Gregory v. State,* 616 A.2d 1198, 1204–05 (Del.1992) (holding that drug-related offenses fall outside the scope of Delaware Rules of Evidence 609(a)(2)).

On appeal, Hull argues that the evidence of Hayman's drug conviction was relevant because "drug dealing is a dangerous business which carries the potential of armed conflict as a by-product of commercial enterprise." [3] Hull wanted to challenge Batson's testimony that it was Hull who had chased Batson in a white Jeep Cherokee and fired shots at him. Hull wanted to argue that, since Batson was driving Hayman's truck, Batson was mistaken for Hayman by an unknown, drug-related, third-party "shooter" who intended to injure Hayman.

Under Delaware Rules of Evidence 611, cross-examination "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The trial judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Hayman did not testify about his prior drug possession or about drugs at all during his direct examination. Nor was his drug conviction admissible for impeachment purposes.

Hayman's prior drug convictions were not admissible under Delaware Rules of Evidence 609(a) to impeach Hayman's credibility because they were neither felonies nor crimes of dishonesty.[4] Nor were they admissible as evidence of bias.[5] The fact that Hayman had prior misdemeanor drug convictions itself carries no implication that there was any "connivance or collusion" between Batson and Hayman to fabricate their testimony.[6]

The record reflects that Hull wanted to discredit Batson's eyewitness identification indirectly through Hayman. The use of Hayman's prior drug convictions to impeach the credibility of another witness (Batson) did not fall within the ambit of any evidentiary rule.[7] Batson had known the defendant for six or seven years because the two frequented the same racetrack. As a result, the likelihood of Batson misidentifying Hull as the driver of the white Jeep Cherokee was remote. Hayman's prior misdemeanor convictions had no evidentiary significance under the circumstances of this case. Therefore, the trial judge's refusal to admit those convictions into evidence did not violate Hull's confrontation clause rights.[8]

### Evidence Established Crime Scene

■ At the conclusion of the State's case-in-chief, Hull moved to dismiss the charges, arguing that the State had failed to establish the location of the alleged offenses. The trial judge denied the motion, finding that, based on Detective Mitchell's testimony, the shooting incidents occurred within Sussex County, Delaware. On appeal, Hull reiterates his claim that there was insufficient evidence of the location of the incident within Delaware.

The record reflects that after Batson reported the offense to the police, Detective J.B. Mitchell drove Batson back to the route he had traveled from the Delmar Racetrack that evening. On State Route 54, also known as the Delmar Road, Batson told the officer that he first observed

---

3. *See, e.g.,* Delaware Rules of Evidence 404(b).

4. *See Archie v. State,* 721 A.2d 924, 928 (Del. 1998).

5. *Cf. Weber v. State,* 457 A.2d 674, 678–83 (Del.1983) (holding that evidence that State's witnesses had received payment from the vic-

tim's family should have been allowed to demonstrate bias).

6. *See Lovett v. State,* 516 A.2d 455, 470–71 (Del.1986).

7. *See Dollard v. State,* 838 A.2d 264, 267–68 (Del.2003).

8. *See Lovett v. State,* 516 A.2d at 471.

the vehicle driven by Hull at the Jersey Road intersection, just west of Delmar. The shooting took place between Jersey Road and Susan Beach Road, which was approximately one and a half miles west of Jersey Road. Batson also told the officer that the shooting occurred before he reached a wooded area along the road, which was located before Packing House Road.

A young witness named Kelsey Craven testified that she had observed two cars stop along Delmar Road in front of her house, one that looked like a brown pickup and the other like a white Blazer. She testified that the man driving the white car got out and started to walk up to the brown truck, but the brown truck "just speeded off" before he could reach it. Craven lived at 6370 Delmar Road, just west of the intersection of Jersey Road and approximately two or three miles East of Packing House Road. Hull lived on Naylor Mill Road, just east of the intersection of Jersey and Naylor Mill Roads, and about four and a half miles away from Craven's residence. Hull owned a white Jeep. The pickup truck Batson was driving was described as tan in color.

Mitchell testified that the stretch of Delmar Road from Jersey Road to beyond Packing House Road was located in Sussex County, Delaware. Detective Mitchell's testimony, in conjunction with that of Kelsey Craven, was sufficient to establish jurisdiction and venue in this case. Looking at this evidence in a light most favorable to the State, there is sufficient proof that the offenses (Aggravated Menacing and the Reckless Endangering, and their related Firearm offenses) took place in Sussex County, Delaware. The fact that the State's evidence did not precisely establish where the events took place is not critical because suits may be established by inference.[9] Accordingly, the trial judge proper-ly denied the motion for judgment of acquittal on the basis of insufficient proof of jurisdiction.

### Conclusion

The judgments of the Superior Court are affirmed.

---

**9.** *Thornton v. State,* 405 A.2d 126, 127 (Del. 1979).