**Paul A. HIGNUTT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 169, 2008.

Supreme Court of Delaware.

Submitted: Oct. 8, 2008.

Decided: Oct. 15, 2008.

---

Joseph A. Hurley, Esquire, Wilmington, Delaware, for Paul A. Hignutt.

Gregory E. Smith, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and JACOBS, Justices.

HOLLAND, Justice.

The defendant-appellant, Paul A. Hignutt ("Hignutt"), appeals his convictions of Felony Theft and Falsifying Business Records, following a jury trial in the Superior Court. Hignutt argues, first, that the trial judge abused her discretion by permitting a witness for the State to testify about the witness's personal goals, and second, that the trial judge committed legal error in failing to instruct the jury on the lesser included offense of Misdemeanor Theft.

We have determined that neither of those arguments is supported by the record. Therefore, the judgments of the Superior Court must be affirmed.

### Facts

Hignutt was working as a service manager at Sheridan Nissan ("Sheridan") in the summer of 2006. Sheridan is an automobile dealership in New Castle County that also offers maintenance and repair services on Nissan automobiles. As service manager, Hignutt supervised the service advisers and the mechanics, referred to as "technicians" at Sheridan.

When a customer brings in her car for maintenance or repair services, she meets with a service adviser who prepares a repair order, listing the services that the customer has requested. The customer signs the repair order and then the service adviser gives it to the technician to perform the requested work on the car. The technician stamps the date and time on the repair order by inserting it into an electronic time stamp when he begins to work on the car and again when he is finished. He also writes on the back of the repair order the problems with the car and the work he performed.

Then the technician gives the repair order back to the service adviser, who generates an invoice from the repair order based on the labor and parts used. The service adviser gives the customer the invoice when the customer retrieves her car. Once the customer pays for the services, the repair order is "closed out."

In late June of 2006, Jewel R. Hogan ("Hogan") brought her black Nissan Maxima to Sheridan for routine maintenance because the "check engine" light was on. A service adviser filled out a repair order for Hogan's car, which was under a manufacturer's warranty. Technician Richard

John Szostkowski Jr. ("Szostkowski") performed routine maintenance on the car.

Soon after, Hignutt asked Szostkowski to repair Hignutt's daughter's burgundy Nissan Maxima, which was not covered by a manufacturer's warranty. Szostkowski replaced both front catalytic converters on the burgundy Maxima. Rather than document his work on the back of a repair order for Hignutt's burgundy Maxima, Szostkowski documented the work on the back of the repair order for Hogan's black Maxima. Therefore, the repair order for Hogan's black Maxima indicated that the catalytic converters had been replaced when the work had actually been performed on Hignutt's burgundy Maxima. Repairing and replacing catalytic converters is considered major repair work and not routine maintenance.

When a vehicle is under a manufacturer's warranty, Sheridan performs the service and supplies the necessary parts and then bills the manufacturer ("Nissan"), rather than the customer, for the total price listed on the invoice. Because the repair order for Hogan's car indicated that the catalytic converters had been replaced, the labor, parts and any incidentals, such as a rental car, would have been billed to Nissan. The invoice for Hogan's car listed the total price for parts, labor and a rental car as $2,319.92. That invoice, however, was never "closed out."

When Sheridan discovered that the invoice had not been "closed out" and that the work had not been performed on Hogan's car, Sheridan did not bill Nissan. Instead, Sheridan withheld $2,319.92 from Hignutt's paycheck. Hignutt resigned over the dispute and filed a claim for unpaid wages with the Department of Labor. Sheridan repaid the $2,319.92 to Hignutt and filed a criminal complaint against him.

### Szostkowski's Trial Testimony

At trial, Szostkowski testified for the State that, in the summer of 2006, Hignutt had asked him to work on Hignutt's daughter's burgundy Maxima. Szostkowski explained that he wrote on the back of the repair order for Hogan's black Maxima the list of services performed on and parts installed in Hignutt's burgundy Maxima. Szostkowski also testified about a later encounter with Hignutt in February or March of 2007 during which Hignutt offered Szostkowski a job with Hignutt's new employer and Szostkowski declined the offer.

The prosecutor asked Szostkowski, "[W]hat were your goals at that point in time in your life?" Szostkowski answered that he was engaged to be married, raising his two 15–year–old brothers and working to support his fiancée and brothers. The defense objected. The trial judge responded, "I know it's not directly relevant but I'm overruling the objection because it just is background that we normally permit with any witness to describe a little bit about their life," and permitted Szostkowski's response. The defense also requested a cautionary instruction as to Szostkowski's testimony. The trial judge responded that she would not give a special curative instruction other than the normal instructions given at the close of the case that the jury should not take into account any sympathy or bias elicited when considering the testimony of the witnesses (" 'sympathy' instruction").

### Testimony About Lifetime Goals Permissible

Hignutt asserts that the trial judge abused her discretion in permitting Szostkowski to talk about his personal goals when he testified for the State. Hignutt argues that Szostkowski's credibility was significant because Szostkowski was a crit-

ical witness whose testimony about raising his 15–year–old brothers and preparing to get married impermissibly elicited sympathy from the jury. Hignutt also argues that the "sympathy" instruction that the trial judge gave at the conclusion of trial "was not direct enough to refer to the technician's testimony regarding his future goals." Therefore, Hignutt argues, the testimony was unfairly prejudicial and had no probative value.

■■■■ This Court reviews decisions of the trial court regarding the admissibility of evidence for abuse of discretion.[1] The decision whether to admit testimony as relevant under D.R.E. 402 is within the sound discretion of the trial judge.[2] The determination of whether the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice under D.R.E. 403 also is particularly within the trial judge's discretion.[3] Further, "[a] trial judge has broad discretion in determining the relevance of 'peripheral or background evidence concerning a witness.'"[4]

In *Chapman v. State*, this Court explained that background evidence about a witness "may be necessary to provide the jury with the general character of the witness."[5] In *Chapman*, the defendant was charged with Aggravated Menacing, Possession of a Firearm During the Commission of a Felony and Carrying a Concealed Deadly Weapon after the vehicle in which he was a passenger allegedly stopped on the side of the road and the defendant pulled a gun on two pedestrians who had yelled at the vehicle to slow down as it drove by.[6] The defendant and the driver of the vehicle testified that they did not display a gun during the confrontation, but one complaining witness testified that the defendant had displayed a gun while the other complaining witness corroborated that allegation.[7] The jury resolved the credibility dispute against the defendant, and found him guilty of all three charges.[8] At trial, the prosecutor asked the complaining witnesses about their educational backgrounds.[9] In *Chapman*, this Court determined that, because "[c]redibility was the nub issue in this case[,][e]vidence of good character, to a limited extent, was relevant to the issue of credibility."[10] The Court concluded that the "good character" evidence was limited and its admission was not an abuse of discretion.[11]

In *Webb v. State*, the defendant-appellant, who had been convicted of first degree rape, argued that the prosecution had attempted to elicit sympathy for the victim by asking her about her grades in school and her plans for the future.[12] This Court held that, although the questions were objectionable, they were not highly inflammatory, and because they were withdrawn,

1. *Ares v. State*, 937 A.2d 127, 129–30 (Del. 2007).

2. *See* D.R.E. 402 (2008); *Lampkins v. State*, 465 A.2d 785, 789–90 (Del.1983).

3. *See* D.R.E. 403 (2008); *Williams v. State*, 494 A.2d 1237, 1241 (Del.1985).

4. *Hull v. State*, 889 A.2d 962, 964 (Del.2005) (quoting *Chapman v. State*, 821 A.2d 867, 869 (Del.2003)).

5. *Chapman v. State*, 821 A.2d at 869.

6. *Id.* at 868–69.

7. *Id.* at 869.

8. *Id.*

9. *Id.*

10. *Id.*

11. *Id.*

12. *Webb v. State*, 2006 WL 2959891, at *1 (Del.Supr.).

they were not unduly prejudicial.[13] In *Webb*, this Court noted that "[t]he prosecutor explained that he was trying to make the witness comfortable, and we see no reason to doubt that explanation."[14]

Similarly, the trial judge in this case permitted the questions about Szostkowski's personal goals because she determined that they were routine background questions. The trial judge explained that the testimony was "precisely the type . . . that comes in generally at the beginning of every witness's testimony, [such as] how many children do you have, what are their ages, are you married, how long have you been married" and that it did not "go beyond what is normally permitted." Like *Chapman*, this case turned on the credibility of Szostkowski's testimony.

Because the questions about Szostkowski's personal goals were limited and went to his credibility as "good character" evidence, they did not prejudice the defendant. Like *Webb*, the prosecutor had an explanation for asking the witness about his goals for the future. The prosecutor in this case explained that the defense suggested on cross-examination that Szostkowski was on probation during the summer 2006 incident at Sheridan.[15] On redirect, the prosecution asked Szostkowski whether he was on probation when the incident occurred and Szostkowski responded that he was not but that he had been on probation five years prior for a juvenile conspiracy conviction and had served five months of a one-year sentence.

The prosecution next asked Szostkowski whether he had performed community service as part of the probation. The defense objected. The prosecution withdrew the question and instead asked Szostkowski about the winter 2007 encounter with Hignutt. The prosecutor explained that he had asked Szostkowski about his goals for the future in an attempt to rehabilitate Szostkowski as a witness because it had just come out that Szostkowski had a juvenile conviction for conspiracy.

The record reflects that Szostkowski's background testimony was not unfairly prejudicial and was properly admitted into evidence. The fact that the jury resolved the credibility dispute in favor of Szostkowski does not in itself indicate that Hignutt was prejudiced. In addition, the trial judge gave a "sympathy" instruction at the conclusion of trial to further protect the defendant from prejudice. Therefore, we conclude that the trial judge did not abuse her discretion when she permitted Szostkowski's testimony about his personal goals.

### *Lesser Included Offense Instruction*

 In this appeal, Hignutt also argues that the trial judge erred in denying his request for an instruction on the lesser included offense of Misdemeanor Theft. When asked to give a jury instruction in a criminal case, the trial court must determine:

(1) that the defense or lesser included offense for which the instruction is requested could apply as a matter of law; (2) that the evidence presented meets the statutory requirements to entitle the defendant to the requested instruction; and (3) whether the particular form, content, or language of the instruction pro-

13. *Id.*

14. *Id.*

15. The prosecution asked Szostkowski whether he had told Hignutt that Sheridan had pressured Szostkowski to testify against Hig-

nutt. The prosecution also asked whether Szostkowski had told Hignutt that Szostkowski could not "come forward and tell what really happened because it might affect a probation."

posed by the defendant represents a correct statement of the law.[16]

We review *de novo* the trial court's refusal to give a jury instruction on a lesser included offense.[17]

For the first two factors, the trial court must look to the relevant statute governing the availability of instructions,[18] which in this case is title 11, section 206(c) of the Delaware Code.[19] Section 206(c) provides:

The court is not obligated to charge the jury with respect to an included offense unless there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense.

The second factor is the only one at issue in this case. Therefore, we must consider whether sufficient evidence was presented at trial to support an instruction on the lesser included offense of Misdemeanor Theft.

■ On appeal, the question for this Court is whether the trial court properly applied section 206(c) to the facts of this case in determining that Hignutt was not entitled to an instruction on the lesser included offense of Misdemeanor Theft.[20] A trial judge should grant a request for an instruction on a lesser included offense if the following four requirements are met:

(1) the defendant makes a proper request; (2) the lesser included offense contains some but not all of the elements of the charged offense; (3) the elements differentiating the two offenses are in dispute; and (4) there is some evidence that would allow the jury rationally to acquit the defendant on the greater charge and convict on the lesser charge.[21]

A theft occurs when a person takes the property of another with the intent to appropriate it.[22] The only difference between Felony Theft and the lesser included offense of Misdemeanor Theft is the value of the property. Theft is a class G felony if the value of the property is $1,000 or greater.[23] If the value of the property is less than $1,000, the theft is a class A misdemeanor.[24]

**16.** *Cseh v. State*, 947 A.2d 1112, 1113–14 (Del. 2008) (quoting *Wright v. State*, 953 A.2d 144 (Del.2008) (en banc)).

**17.** *Id.* at 1113 (citing *Wright v. State*, 953 A.2d 144).

**18.** *Id.* at 1114.

**19.** Del.Code Ann. tit. 11, § 206(c) (governing instructions on lesser included offenses). *See also* Del.Code Ann. tit. 11, § 303(c) (governing instructions on statutory defenses); Del. Code Ann. tit. 11, § 302(b) (governing instructions on other issues, including accident); *Cseh v. State*, 947 A.2d at 1114 (citing *Wright v. State*, 953 A.2d 144).

**20.** *See Cseh v. State*, 947 A.2d at 1114 (citing *Wright v. State*, 953 A.2d 144).

**21.** *Cseh v. State*, 947 A.2d at 1114 (citing *Bentley v. State*, 930 A.2d 866, 875 (Del.2007); *Henry v. State*, 805 A.2d 860, 864 (Del.

2002)(per curiam)). In *Henry v. State*, the defendant appealed from the trial court's refusal to give the lesser included charge of second degree murder. *Henry v. State*, 805 A.2d at 866. This Court determined that the jury instruction should have been given because Henry's own testimony provided sufficient evidence to submit the issue to the jury. *Id.* In *Bentley v. State*, the defendant appealed from the trial court's refusal to give a lesser included offense charge for manslaughter. *Bentley v. State*, 930 A.2d at 875. This Court determined that the testimony at trial centered on who committed the murder, not the intent. Therefore, there was no rational basis in the evidence for a lesser included offense instruction for manslaughter. *Id.* at 875–76.

**22.** Del.Code Ann. tit. 11, § 841(a) (2008).

**23.** *Id.* at § 841(c)(1).

**24.** *Id.*

Hignutt was indicted for Felony Theft of the repairs to the burgundy Maxima based on the invoice price of $2,319.92. To support his request for an instruction on the lesser included offense of Misdemeanor Theft, Hignutt argued that there was a discrepancy in the evidence as to the value of the labor and the rental car. Although the invoice lists the price of the labor required to replace and repair the catalytic converters as $102.03, Hignutt noted that Szostkowski testified at trial that he spent four hours on the burgundy Maxima, yet the time punches on the repair order indicate that the car was worked on over a period of six days.[25] Hignutt also pointed out that the value of the rental car listed on the invoice is $643.36 but Enterprise billed Sheridan for just $494.89. Therefore, Hignutt questioned "the accuracy and integrity of the amount of labor and parts" appropriated from Sheridan.

Hignutt did not, however, dispute the value of the parts used to repair the burgundy Maxima. There was no evidence that the prices on the invoice were inconsistent with the actual prices Sheridan charges for the parts used to repair and replace catalytic converters. Consequently, even if the price of the rental car and labor were deducted from the invoice entirely, the value of the parts appropriated would still be $1,000 or greater.

The total on the invoice was $2,319.92. If $643.36 is deducted for the rental car, $102.03 for the labor, and $64.93 for the routine maintenance actually performed on Hogan's black Maxima, the value of the parts used to repair and replace the catalytic converters on the burgundy Maxima was $1,509.60. Therefore, there was sufficient evidence to find that the value of the goods appropriated was $1,000 or greater and to convict Hignutt of Felony Theft.

The trial judge recognized that "[t]here was some testimony about the discrepancy," but ultimately concluded:

> [T]his is not really the basis for a lesser included offense[.][I]t is the basis for whether or not the defendant is guilty beyond a reasonable doubt as to all of the elements of the offense. If there had been evidence that the amount of labor and the parts, and so on, could have been less than $1,000, I think we might have a basis for a lesser included. But I think in this case it's simply a question for whether or not that element has been met. So I'm declining to give the lesser included offense.

■ Hignutt correctly argues that "a defendant is entitled to an instruction on a lesser included offense if there is any evidence fairly tending to bear upon the lesser included offense, 'however weak' that evidence may be."[26] In this case, however, there is no evidence that the value of the parts appropriated was less than $1,000. Accordingly, the trial judge did not err in refusing to give an instruction on the lesser included offense of Misdemeanor Theft. The record reflects that there was no evidence that would allow the jury rationally to acquit Hignutt of Felony Theft and to convict on the lesser charge of Misdemeanor Theft.

### Conclusion

The judgments of the Superior Court are affirmed.

**25.** According to the Sheridan invoice, the rate for a technician's labor ranges from $42 to $89 per hour. Szostkowski testified that his rate was $89 per hour.

**26.** *Bentley v. State,* 930 A.2d at 875 (quoting *Henry v. State,* 805 A.2d at 865).