Jack WHITE, Claimant Below, Appellant,

v.

GULF OIL CORPORATION and Anthony Oltromonto, d/b/a Tony's Gulf Station, Respondents Below, Appellees.

Supreme Court of Delaware.

Submitted Feb. 28, 1979.

Decided Aug. 31, 1979.

Edward Z. Sobocinski, Wilmington, for claimant below, appellant.

William F. Taylor and Richard H. Morse of Young, Conaway, Stargatt & Taylor, Wilmington, for respondents below, appellees.

Before HERRMANN, C. J., and DUFFY and HORSEY, JJ.

HORSEY, Justice:

This appeal concerns a claim for workmen's compensation disability benefits which depends upon the establishment of an employee-employer relationship between the claimant, a gas station service attendant, and a national oil company whose products were advertised and sold at a station operated by the dealer-owner of the premises.

The attendant, Jack White, appeals the Superior Court's affirmance of the Industrial Accident Board's dismissal of his claim as to Gulf Oil Corporation on the Board's finding that White's employer was not Gulf but the owner-operator of the station, Anthony Oltromonto, trading as "Tony's Gulf Station."

White, the victim of a robbery of the station which left him a quadriplegic with permanent brain damage, had originally asserted his claim solely against Oltromonto, but White later joined Gulf as a defendant on finding that Oltromonto did not carry workmen's compensation insurance.

The Board, after conducting a hearing for the limited purpose of determining who was White's employer on the date of the accident, concluded from the evidence presented that Oltromonto, not Gulf, was his employer for workmen's compensation purposes and dismissed the claim as to Gulf. On appeal, the Superior Court affirmed, finding no issues of fact and no error of law by the Board in applying the "settled tests for determining the existence of an employment relationship to the undisputed facts of the case."

I

On the date of his injury, February 6, 1976, White, who had been hired by Oltromonto, had been working for several days as a service attendant at the gas station located in New Castle, Delaware, which Oltromonto owned as well as operated. Oltromonto had been conducting a service station operation at the premises for over 20 years—since 1973 as a Gulf dealer and for the previous 16 years as an American Oil Company dealer.

Under the terms of several written agreements between them, Gulf agreed to equip Oltromonto's premises with underground gasoline storage tanks, pumps, signs and other equipment necessary for the operation of a Gulf station, all at a nominal or minimal rental per year, with Gulf retaining title thereto. Gulf also agreed to keep the station supplied with gasoline, delivered on a consignment basis, with title not passing to Oltromonto until pumped for sale to the station's retail customers. Gulf reserved the right to make periodic audits of Oltromonto's records—limited, however, to determine amount of gasoline and oil on hand and sold. Gulf also reserved the right to terminate the agreement, forthwith, if Oltromonto: failed to pay for any products purchased; ceased to use the premises for the exclusive sale of Gulf products; or permitted any unlawful act or conduct on the premises that Gulf believed detrimental to it or the public.

The agreements expressly denied Gulf any right of entry on the premises for purposes other than those set forth above; right to set the retail sale price of gas or oil; or, right to participate in any "management" decisions as to the station, including selection of employees and their attire.

The agreements further provided that Oltromonto, and not Gulf, was responsible for: (1) furnishing all services necessary for the station operation; (2) cost of all labor and expenses incurred in its operation, including licenses, taxes and insurance; (3) hiring, firing and paying all station employees; (4)

day-to-day operation of the station; and (5) complying with all applicable laws, including workmen's compensation;[1] and reserved to Oltromonto the right to operate an auto maintenance-repair service on the premises.

The only money Oltromonto received from Gulf was a "supply rental" of 2½ cents per gallon for certain grades of gasoline on hand. In turn, Oltromonto paid Gulf a fixed price per gallon of gas sold but, as stated, Oltromonto was entitled to sell the products for whatever price he chose and to retain all profits.

The agreements described Oltromonto as "Dealer" or "lessee", gave either party the right, on 30 days' notice, to terminate their relationship, and further expressly provided,

> "neither Dealer nor the employees of Dealer shall be deemed or construed to be or represent themselves to be employees of Gulf for any purpose, and Gulf assumes no responsibility for the acts or omissions of Dealer, his servants or employees, in the management or operation of his business, negligent or otherwise . . . ."

Testimony as to the parties' conduct was consistent with the terms of their agreements and not disputed. Gulf's visits to the premises were limited to tank-truck bulk deliveries of gasoline and periodic (four to six weeks) examinations of Oltromonto's books and inventorying of supplies of gas/oil on hand and sold. Otherwise, Gulf's representatives did not participate in Oltromonto's day-to-day operation of the station.

## II

On appeal, White does not contest the finding that he was Oltromonto's employee, but tacitly concedes it. Instead, White focuses on the relationship of Oltromonto to Gulf and contends that the facts "warrant" a related finding[2] that Oltromonto was Gulf's employee rather than an independent contractor. White then states that since Oltromonto should be found to be an employee of Gulf, White then becomes Gulf's employee, under the fellow-servant rule.

White contends that the Court erred in not applying the "nature of the work" test for determining the relationship of Oltromonto to Gulf rather than the "right to control" test employed by the Court in determining White's relationship to Gulf and Oltromonto.

Thus, the questions for review are (1) whether the Court chose the correct test for determining White's right to compensation from Gulf and (2) whether in applying the proper test there was substantial evidence to support the Court's finding, and that of the Board, that White's employer was Oltromonto and not Gulf.

We affirm, finding that there was substantial evidence to sustain the finding that White was not an employee of Gulf—applying either or both of the tests urged for determining the existence of an employment relation for purposes of disability compensation.

## III

The question of law presented, that is, what is the applicable test of the existence of an employer-employee relation for recovery of workmen's compensation benefits, is not one of first impression for this Court. In *Lester C. Newton Trucking Company v. Neal*, Del.Supr., 204 A.2d 393 (1964), Justice Wolcott stated:

> "Ordinarily there are four elements which may be taken into consideration in answering the question of whether or not

---

1. However, as stated, at the time of White's injury, Oltromonto did not carry workmen's compensation insurance, even though Delaware law required him to. 19 *Del.C.* § 2306.

2. Neither the Board nor the lower Court made any finding as to Oltromonto's relationship to Gulf. The hearing transcript before the Board does not reflect counsel's contentions, and the record does not include legal memoranda that counsel submitted to the Board. However, we assume that the contention here made as to the relationship of Oltromonto to Gulf was also made before the Board, as it was before the Superior Court, even though the Court's opinion does not touch on it.

the relationship of employer and employee exists. These are (1) who hired the employee; (2) who may discharge the employee; (3) who pays the employee's wages; and (4) who has the power to control the conduct of the employee when he is performing the particular job in question." (Citations omitted) 204 A.2d at 394–395.

This is considered the traditional approach generally applied in workmen's compensation cases to determine the existence of an employer-employee relationship where workmen's compensation statutes do not otherwise set forth the standard or define the statutory meaning to be given the terms "employer" and "employee". See 1B Larson, *Workmen's Compensation Law* § 43.10 (1979), stating:

"Since most compensation acts contain no definition of the term 'employee', beyond some such general phrase as 'every person in the service of another under any contract of hire, express or implied,' it has generally been taken for granted that the common-law definition of employee, or servant, worked out for vicarious tort liability purposes, was meant to be adopted. This 'definition' usually consists largely of a listing of relevant characteristics or tests, coupled with the warning that all except the control test are merely indicia pointing one way or the other."

The Delaware compensation statute's definitions of "employer"[3] and "employee"[4] do not suggest that the traditional common-law definition of employee is not to be applied in determining whether a claimant is an employee for purposes of compensation benefits. See *Restatement (Second) of Agency* § 220 (1958) for a listing of factors or tests generally employed to determine whether one is acting as a servant of another or as an independent contractor.

We recognize that no single rule could be laid down to determine whether a given relationship is that of an employee to an employer as distinguished from an independent contractor. See *Gooden v. Mitchell*, Del.Super., 21 A.2d 197 (1941), stating, "Each particular case must, out of necessity, depend on its own facts, and ordinarily no one characteristic of the relation is decisive. All of the characteristics must be considered. Consequently, in a majority of the cases the question becomes one of fact." 21 A.2d at 201.

■ However, the fact given predominant consideration in determining an employment relationship is that of right to control. This Court so stated in *Newton*, supra:

". . . in the last analysis the question is almost exclusively determined by the fact of which possible employer has the right to control and direct the activities of the employee in the performance of the act which caused his injury. This conclusion, we think, is almost uniformly the test applied in other jurisdictions. (Citations omitted).

\* \* \* \* \* \*

"The test being the right to control, it makes little difference whether or not that right has actually been exercised. *Gooden v. Mitchell*, supra. From the existence of the right to control springs the employer-employee relationship . ." 204 A.2d at 395.

Application of the "right to control" test to workmen's compensation cases has been criticized, not on the ground of being inappropriate but as frequently given undue weight. The argument made is that compensation acts were enacted to benefit the

---

**3.** 19 *Del.C.* § 2301(8) defines the term "employee" as follows:

"(8) 'Employee' means every person in service of any corporation (private, public, municipal or quasi-public), association, firm or person excepting those employees excluded by this subchapter under any contract of hire, express or implied, oral or written, or performing services for a valuable consideration, excluding . . . ."

**4.** 19 *Del.C.* § 2301(9) defines the term "employer" as follows:

"(9) 'Employer' includes all those who employ others unless they are excluded from the application of this chapter by any provision of this subchapter . . . ."

employee injured at work whereas the "right to control" test evolved for the purpose of limiting the scope of a master's vicarious liability for torts or injuries to third persons resulting from acts of an employee-servant. The argument is made that in compensation cases greater consideration should be given (1) the nature of the claimant's work; and (2) his work in relation to the employer's work—not to the exclusion of application of the "right to control" test but with the factors relevant to each test being given due weight depending upon the circumstances of the particular case. Larson defines this additional test as "the relative nature of the work" test, stating:

"This test, then, which for brevity will be called the 'relative nature of the work' test, contains these ingredients: the character of the claimant's work or business— how skilled it is, how much of a separate calling or enterprise it is, to what extent it may be expected to carry its own accident burden and so on—and its relation to the employer's business, that is, how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job." 1B Larson, supra, § 43.52.

However, Larson also agrees that the two tests and the factors considered under each "cannot be applied mechanically as separate tests. They are inextricably intertwined with each other. Their weight depends often on particular combinations . . . ." 1B Larson, supra, § 43.53. *Newton* does not represent to us a mechanical or outmoded application of the law; and we are not persuaded that it should be modified.

## IV

■ Whether we look at White's relation to Oltromonto or Oltromonto's relation to Gulf, we find substantial evidence to support the ultimate finding of the Board that White's employer was not Gulf but Oltromonto. Clearly, Oltromonto alone had the right and power to control White under the four prong test of *Newton*, that is, right to hire, fire, determine wages and fix job responsibilities. The fact that White was working on the day and at the time of the station's robbery was solely within Oltromonto's control.

■ As between Oltromonto and Gulf, Gulf cannot be said to have controlled Oltromonto's business or how he ran it. Cf. *Hoover v. Sun Oil Company*, Del.Super., 212 A.2d 214 (1965). Each party had the right to terminate its relationship on short notice; and Oltromonto could then undertake to sell a competitor's gas or put his premises to another use. A master-servant relationship cannot be premised on the mere ability of one party to a contract to terminate it at will. *Shell Petroleum Corporation v. Linham*, Miss.Supr., 163 So. 839 (1935). Gulf's interest in Oltromonto's business was limited to receiving a fixed sum for whatever gas and oil Oltromonto sold; and beyond that Gulf had no interest in or right of control over its operation and exercised none.

The legal relationship of a service station operator and attendants to a distributing company has been the subject of numerous decisions involving workmen's compensation claims. See Annot. 83 A.L.R.2d 1282 at 1300 (1962). The varying results are seen to turn on the particular facts or combination of factors, with "control" given the greatest significance. In *Bieluczyk v. Crown Petroleum Corporation*, Conn.Supr., 134 Conn. 461, 58 A.2d 380 (1948) and *Eason Oil v. Runyon*, Okl.Supr., 158 Okl. 241, 13 P.2d 118 (1932), compensation was awarded an injured attendant asserting a claim against an oil company-distributor. Both holdings are based on findings of "control" factors. In *Bieluczyk*, the company owned the station premises, required the operator to maintain the premises in compliance with company rules, and made periodic inspections of the station operation. In *Eason*, the station was similarly owned by the company and leased to the operator, the company retained all profits above a commission paid on gallons sold, and the operator was considered by the company to be a manager

or agent. *Accord, Standard Oil Co. v. Industrial Com.*, Colo.App., 552 P.2d 1029 (1975), also involving a company station leased to the operator which the court found to be the only method employed by the company to market its gasoline. In *Standard*, it would appear that compensation was based on a consideration of a combination of both "right to control" and "nature of the work" factors.

Cases reaching the contrary result are more numerous, including *Barber v. Continental Oil Company*, Okl.Supr., 325 P.2d 949 (1958); *Coe v. Esau*, Okl.Supr., 377 P.2d 815 (1973); *Apple v. Standard Oil, Division of American Oil Company*, D.C.Cal., 307 F.Supp. 107 (1969); *Miller v. Sinclair Refining Company*, 5 Cir., 268 F.2d 114 (1959); *Mid-Continent Petroleum Corporation v. Vicars*, Ind.Supr., 221 Ind. 387, 47 N.E.2d 972 (1943); *Carter v. Industrial Com.*, Ill. Supr., 63 Ill.2d 414, 348 N.E.2d 839 (1976); *Dawson v. Clark Oil & Refining Corp.*, Mo. Ct.App., 410 S.W.2d 353 (1966); *Hayes v. Travelers Insurance Company, Inc.*, Tex. Civ.App., 358 S.W.2d 254 (1962).

In each of these cases compensation claims of attendants or operators asserted against an oil company distributor were rejected. The definitive factor common to all of them was the court finding that the company neither retained nor exercised control over the station operator. The facts of the instant case clearly fall within the fact pattern of these latter decisions and compel us to affirm the decision of the Superior Court dismissing the action as to Gulf.

This decision does not preclude White from pursuing his claim against Oltromonto for failure to comply with the provisions of 19 *Del.C.* § 2306, as amended; and this action should be remanded to the Industrial Accident Board for further proceedings as to White's claim against Oltromonto.

AFFIRMED.