Anthony CHRISTOPHER, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 348, 2002.

Supreme Court of Delaware.

Submitted: May 6, 2003.
Decided: June 9, 2003.

J. Brendan O'Neill, Esquire, Office of the Public Defender, Wilmington, Delaware, for Appellant.

William M. Kelleher, Esquire, and Daniel R. Miller, Esquire, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice.

In this criminal appeal, we again consider the problem of prosecutorial misconduct in closing statements. We also address, *sua sponte*, a serious breach of the standards of professionalism governing all attorneys, including prosecutors. During a colloquy about a jury instruction, the prosecutor called the trial court's ruling "unwise," and, during a discussion in chambers, the prosecutor called the trial court's ruling "ridiculous" or "preposterous." Disrespectful comments have no place in a Delaware courtroom. We trust that, by focusing attention on this problem, we will precipitate a change in attitude and demeanor that will avoid the need to take any disciplinary action in the future.

### Factual and Procedural Background

On the evening of July 4, 2000, while at a party at the Club Uprising in New Castle, Delaware, Anthony Christopher bumped into a woman on the dance floor. Christopher and the woman exchanged words, and the confrontation quickly degenerated into a brawl involving numerous patrons. Christopher and his brother left the club, and a witness heard Christopher's brother say to Christopher, "Let's go get the piece."

Christopher returned to the club with a gun. He shot Orain Harriott twice and also shot a bystander. Several people then grabbed Christopher and pulled him outside. After his arrest, and after being given Miranda warnings, Christopher gave a taped statement to the police. In it, Christopher admitted being at the club, but denied shooting anyone.

Christopher went to trial on charges of attempted murder, assault second degree, and two counts of possession of a firearm during the commission of a felony. During trial, Christopher objected to the admission of: (i) the hearsay statement attributed to his brother; and (ii) his statement to the police. Both objections were overruled. In closing arguments, the prosecutor said:

> [D]id anyone jump [Christopher]? No. Why not? How many among us would jump somebody who was standing there, armed with a gun, for fear of turning that gun ... the person turning the gun on them? How many heroes are there, really, among all of us? Either you have folks on the jury or even us, or even Detective MacMicking [the investigating officer], who is trained.

The trial court declared those comments improper and gave a curative instruction.

The jury found Christopher not guilty of attempted murder, but guilty of the lesser included offense of assault first degree; not guilty of assault second degree, but guilty of the lesser included offense of reckless endangering first degree; and guilty of two counts of possession of a firearm during the commission of a felony. Following sentencing, Christopher filed this appeal.

### Discussion

Christopher first argues that the "Let's go get the piece" testimony was hearsay and should have been excluded

from evidence. The trial court found that it was admissible as an excited utterance, which is an exception to the hearsay rule. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."[1] The trial court acted well within its discretion in concluding that the club brawl was a startling event and that Christopher's brother was under the stress of excitement, caused by the brawl, when he made the statement about getting the "piece."[2]

■ Christopher next argues that his statement to the police should have been excluded from evidence because it was involuntary. He offers no record support for his claim that the interrogating officer overcame his will to resist. To the contrary, the trial court noted that the officer repeatedly advised Christopher that he could stop talking if he wanted to. Accordingly, we find no abuse of discretion in the trial court's decision to admit the statement.

■ Finally, Christopher complains about prosecutorial misconduct in closing argument. Christopher is correct that the prosecutor's comments were improper. By asking the jurors to imagine what they would do if they were at that club facing a man with a gun, the prosecutor was asking them to think of themselves as potential victims.[3] We note that this prosecutor has made closing arguments found to be improper in several prior opinions of this Court. Having determined that the standard announced in *Hunter v. State*[4] does not apply retroactively,[5] however, we conclude that the prejudicial effect of the improper comments was adequately cured by the trial court's instruction to the jury.

■ The prosecutorial misconduct in this case also involved highly inappropriate and unprofessional comments from the prosecutor to the court—misconduct that only came to light from reading the transcript of the discussions about the admissibility of the taped statement. The trial court advised counsel that it was going to give a curative instruction about the fact that the tape was being played for a second time and that, by playing it again, the court was not commenting on the weight that should be given to the tape. The following colloquy then took place:

Prosecutor: I think that is an unwise course of action, your Honor. I would object to that instruction, because, then, you're commenting on how the jury should be viewing the evidence, which is, in effect, invading the province of the jury, in my estimation.

The Court: I've been on the bench nine months. I've not had a decision of mine called unwise, nor had one called preposterous, ridiculous, which is what you termed one of my proposals in chambers. I think it would be unwise for the reasons that I've stated before not to give a curative.... So I am going to give that curative and your objection is noted.

Prosecutor: No disrespect intended, your Honor. It's a position that I felt I needed to say for the record. The previous discussion in chambers, as your honor probably recalls, was, I specifical-

---

1. D.R.E. 803(2).

2. *Williamson v. State,* 707 A.2d 350 (Del. 1998).

3. *See: Pennewell v. State,* 2003 WL 2008197 (Del.Supr.), *Grayson v. State,* 524 A.2d 1 (Del. 1987).

4. 815 A.2d 730 (Del.2002).

5. *Chapman v. State,* 821 A.2d 867 (Del.2003).

ly said off the record and just between lawyers. And you thought the Court and I were having a conversation about differing legal perspectives as opposed to the context of this case.

The Court: If it was a conversation just among lawyers, which it wasn't, I would still expect the courtesy accorded of not calling someone else's proposal ridiculous or preposterous. Never in my tenure on the bench, nor my tenure as a lawyer have I ever called opposing counsel's arguments or theories ridiculous or preposterous, even if I disagreed. That's my point.

Prosecutor: I agree, your Honor. The statement I made in chambers is that I was flabbergasted at the decision, not that it was ridiculous or preposterous.

The Court: You actually used the words "ridiculous" or "preposterous." We don't have to quibble. I recognize it was off the record. That will be the last time I have such a conversation.

■ We raised this matter, *sua sponte*, because it is clear that some attorneys have lost sight of their place in the judicial system. The fact that some judges are friendly, or somewhat informal in their manner, does not mean that judges and lawyers are equals. In judicial proceedings, the judges are in charge. Lawyers are "officers of the Court," who must conform to the judge's instructions without derogatory comments or debate.[6] Lawyers are entitled to protect the record for subsequent review, but must do so in a dignified manner.[7] The judge and the judge's decisions must be respected.

These not only are basic principles of professionalism but ethics that should not have to be discussed in this or any other Supreme Court decision. The trial prosecutor in this case, Daniel R. Miller, Esquire, his peers, and all other attorneys who appear in our trial courts are reminded that Rule 3.5 of the Delaware Lawyers' Rules of Professional Conduct provides, "[a] lawyer shall not... engage in undignified or discourteous conduct which is degrading to a tribunal." This high ethical standard has been the hallmark of Delaware lawyers and must be maintained, if necessary, by disciplinary action in the future.[8] We commend the trial court for its patience in handling a most difficult and unpleasant interaction with counsel.

### Conclusion

Based on the foregoing, the judgments of the Superior Court are AFFIRMED.

---

6. Even if the judge had behaved unprofessionally—clearly not the case, here—the prosecutor would not be entitled to "respond in kind." *See:* Comment to DRPR 3.5; *see also,* Delaware State Bar Association Statement of Principles of Lawyer Conduct (1991), incorporated into Supreme Court Rule 71 related to Admission Pro Hac Vice ("Professional civility is conduct that shows respect not only for courts and colleagues, but also for all people encountered in practice.... Respect for the court requires ... acceptance of rulings of the court ...; emotional self control; [and] the absence of scorn and superiority in words or demeanor;....").

7. *See:* Comment to DRPR 3.5

8. *See: In Re Shearin*, 721 A.2d 157 (Del. 1998), *Paramount Communications v. QVC Network*, 637 A.2d 34, 54–55 (Del.1993).