# SUPERIOR COURT
## OF THE
## STATE OF DELAWARE

MEGHAN A. ADAMS
JUDGE

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801
(302) 255-0634

October 15, 2024

John M. LaRosa, Esq.
LaRosa & Associates LLC
1225 North King Street, Suite 802
Wilmington, DE 19801

Peter H. Kyle. Esq.
John L. Reed, Esq.
Daniel P. Klusman, Esq.
DLA Piper US LLP
1201 North Market Street, Suite 2100
Wilmington, DE 19899

**RE:** ***Michael Buck v. Viking Holding, et al.***
**C.A. No. N20C-08-249 MAA CCLD**

Dear Counsel:

On September 30, 2024, the Court issued its Post-Trial Memorandum Opinion (the "Opinion").[1] Given the unique nature of this action,[2] the Court gave the parties the opportunity to address "any open issues not addressed or mooted" by the Opinion, "by letter within five days."[3]

In response, on October 3, 2024, counsel for plaintiff Michael Buck ("Buck") filed a letter requesting permission to file a motion for costs and post-judgment interest.[4] The Court granted this request and set a deadline for Defendant Viking Holding Management LLC ("Holdco") to respond.[5]

---

[1] *Buck v. Viking Holding Mgmt. Co. LLC*, 2024 WL 4352368 (Del. Super. Sept. 30, 2024).
[2] *Id.* at *7 (noting the unusual "burden shift" in this case).
[3] *Id.* at *29.
[4] D.I. 286.
[5] D.I. 287.

On October 7, 2024, counsel for Holdco wrote a letter to the Court.[6] Instead of following the Court's directive, counsel used the letter to criticize the Court, request that the Court remove a factual finding from the Opinion as being "inappropriate," and rehash points previously decided by the Court. The Court will address the points raised in the letter in turn.[7]

*First*, Holdco questions whether the Court considered the evidence and legal arguments it presented,[8] stating that it has "no way of knowing whether the Court determined that any of [Holdco's] factual and legal arguments were unnecessary to resolve this case in the way the Court chose to resolve it in the Opinion."[9] As stated in the Opinion, as the fact-finder in a bench trial, the judge considers "all exhibits, live and deposition witnesses, the parties' arguments, and the applicable Delaware law."[10] Here, the Court did just that. The Court thoroughly reviewed and considered the entire record in this case, including all briefing and oral arguments previously presented to then-Judge LeGrow.

---

[6] D.I. 288.

[7] The Court is also in receipt of Holdco's October 14, 2024 letter to the Court (D.I. 290). The Court will address the issues raised in that letter separately.

[8] D.I. 288 at 3. (Stating that Holdco "thoroughly presented every factual basis and legal argument necessary to resolve the two key issues" and "rests on the record it has presented and does not waive any of its arguments.")

[9] Id.

[10] *Buck*, 2024 WL 4352368 at *7.

*Second*, Holdco criticizes the Court's factual finding that the FGMK Report was "manufactured."[11]   In doing so, Holdco recycles arguments from its post-trial briefing regarding Buck's termination.

Holdco argues the "*only* issue appropriately raised about the manufacturing of evidence was Buck's bad faith allegation early in the case that Holdco manufactured reasons for Buck's firing to satisfy the 'Cause' definition were not the real reasons for which Novus fired Buck."[12]   Holdco mischaracterizes the Court's prior ruling.

In the Court's September 3, 2021 Order on Holdco's Motion to Dismiss, regarding "manufacturing," it stated:

> Section 9.10(b) of the Holdco Agreement allows Holdco to repurchase the plaintiff's units for "cost," but only if Holdco determines the plaintiff's termination was for "Cause." The Amended Complaint pleads that the reasons given by Holdco and Novus for the plaintiff's termination were "manufactured." See Am. Compl. ¶¶ 45, 120. The Amended Complaint also pleads Holdco knew Novus's stated reasons for termination were manufactured. Those allegations, combined with the plaintiff's non-conclusory allegations disputing the basis for the articulated reasons for his termination, permits the Court to infer reasonably that Holdco did not rely on the reasons stated in the June 17 letter as its basis for reaching its "cause" conclusion. That inference further is supported by the two-month gap between the cause determination and the issuance of the June letter.[13]

---

[11] D.I. 288 at 7-8.
[12] *Id.* at 7 (emphasis in original).
[13] D.I. 35.

The Court notes that in the Amended Complaint, Buck alleges that much of the information FGMK relied upon in its report was based on false information from Murphy and others at Novus, including issues regarding the NetSuite ERP implementation project, purported organizational deficiencies in Novus' Finance Department, and the AMR Account.[14]  As discussed in the Opinion, Buck proved his allegations from the Amended Complaint: much of the information relied upon in the FGMK Report turned out to be incorrect or lacked support in the trial record.[15]

After reviewing all the evidence and arguments, the Court found the FGMK report was "manufactured" in the sense that Murphy hired FGMK because he was unhappy with prior findings from Grant Thornton and Ernst & Young, both of whom found no wrongdoing in connection with the AMR Account.[16]  In a mere two weeks after being hired, and during the holiday season, FGMK issued a report that fell in line with Murphy's "train to a conclusion" to fire Buck.[17]  For all of these reasons, as more fully discussed in the Opinion, the Court found that the FGMK Report was manufactured for the purpose of meeting the Cause definition.[18]

---

[14] D.I. 24 at ¶¶ 85-99.
[15] *See generally* 2024 WL 4352368.
[16] *Id.* at 11.
[17] Id.
[18] To be clear, the Court made no adverse findings regarding FGMK or its reputation as a professional services firm.  Rather, the Court noted that in the context of Buck's firing, the Court was suspicious of FGMK's report and timing.

Dissatisfied with the Court's finding, Holdco asserts that the "Court's conclusions about FGMK in a public opinion are inappropriate and, respectfully, they should be removed." Holdco's attempt to alter the Court's factual finding is improper. Holdco could have presented evidence relating to FGMK's work, but resisted any such third-party discovery.[19] As discussed in the Opinion, Holdco "barely touches upon" the FGMK Report in its post-trial briefing to support the Cause determination.[20] In doing so, Holdco appeared to recognize the low evidentiary value of the FGMK Report. If Holdco is dissatisfied with the Court's ruling, its remedy is an appeal, not to seek an alternative factual finding.[21]

*Third*, Holdco's counsel takes issue with the Court noting that there were numerous typographical errors in two key pieces of evidence, stating "we assume … the comment was not gratuitous and came from a genuine concern about typos."[22]

---

[19] *Buck v. Viking Hldg. Mgmt. Co.*, N20C-08-249 AML CCLD (Del. Super. Oct. 6, 2022); D.I. 62 (at Holdco's request, significantly narrowed the scope of discovery, including third-party discovery, in this case).

[20] *Id.*

[21] *See Christopher v. State*, 824 A.2d 890 (Del. 2003) ("In judicial proceedings, the judges are in charge. Lawyers are 'officers of the Court,' who must conform to the judge's instructions without derogatory comments or debate. Lawyers are entitled to protect the record for subsequent review, but must do so in a dignified manner. The judge and the judge's decisions must be respected.")

[22] D.I. 288 at 8. The Court hopes that counsel's reference to their assumption is not a suggestion that the Court would make a comment without good reason. *See 395 Assoc., LLC v. New Castle Cty.*, 2005 WL 3194566 (Del. Super. Nov. 28, 2005) ("Professional civility is conduct that shows respect … for the courts [which] requires … the absence of scorn and superiority in

To be clear, the Court will explain its reasoning. Given the importance of the Lorenc Letter and Termination Script to this action, instead of attempting to correct the errors, the Court incorporated the text of both into the Opinion as they appeared in the original and made a notation regarding the typos so that the reader understood the Opinion was accurately reflecting the documents.[23]

*Finally*, Holdco argues the Court missed the "critical issue" raised at the outset, namely the application of Section 5.7(b) of the Holdco Agreement. The Court, however, addressed this issue in its February 15, 2024 summary judgment/*Daubert* decision.[24] There, the Court held that "Holdco's reliance on the liability-limiting provisions in Section 5.7 of the Holdco Agreement misses the mark."[25] Having ruled on Section 5.7, the Court will not revisit the issue.

Sincerely,

*/s/ Meghan A. Adams*

_____

Meghan A. Adams, Judge

cc: All Counsel via File and Serve

---

words of demeanor….") (*citing* Principles of Professionalism for Delaware Lawyers, Subpart A (1)-(4)).

[23] 2024 WL 4352368, at *4 n.51. Counsel further urges the Court to re-issue its Opinion to fix one minor typographical error. (D.I. 288 at 8). The Court declines to do so, and instead will focus its judicial resources on the remaining issues in this action.

[24] *Buck v. Viking Hldg. Mgmt. Co. LLC*, 2024 WL 639391 (Del. Super. Feb. 15, 2024).

[25] *Id.* at *6.